## Swan, Assignee, *versus* Watertown Fire Ins. Co.

1. Foreign insurance companies doing business in Pennsylvania, without having complied with the provisions of the statute relating to such companies, cannot set up their turpitude to defeat actions on their contracts brought by innocent persons. The statute does not impose upon the insured the duty of seeing that the insurer and his agents have complied with the statutory requirements.

2. An application was signed by the insured and taken by the agent of the insurance company, who changed the same by inserting therein an additional piece of property as well as answers to three interrogatories relative to the title, encumbrances and value of the land. These changes were made by the agent without the knowledge of the insured or the company. *Held*, that this fraudulent act was within the apparent limits of the agent's employment, although not within the actual authority conferred upon him, and that the company was liable. *Held, further*, that although the insured was not, because of the fraud, held to the warranties of representations in the application, he was bound by the terms of the policy, if after the lapse of a reasonable time he made no objection. *Held, further*, that what is reasonable time when the facts are clearly established is a question of law to be determined by the court.

October 26th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Indiana county*: Of October and November Term 1879, No. 205.

Assumpsit by George Swan, assignee of George H. Warren, against the Watertown Fire Insurance Company, on a policy of insurance.

The defendant is a foreign insurance company, organized under the laws of New York. It obtained a license to do insurance business in this state under the provisions of the Act of 4th of April 1873, Pamph. L. 26. The company named Samuel G. W. Brown as an agent, to whom the insurance commissioner issued a certificate under the provisions of said act, which authorized him " to transact business as the agent of said company, so far as he might be empowered by said company." The company afterwards empowered him " to take applications, make surveys, and underwrite, deliver and consent to the transfers and assignments of policies of insurance, signed by the president or vice-president and attested by the secretary of said company, in the counties of Armstrong, Indiana, Butler, Jefferson and Clarion." In pursuance of this authority Brown established his principal office in Kittanning, Armstrong county, and opened branch offices at Indiana, Brookville, Butler and Clarion. He also employed persons at fixed salaries to take charge of these offices and aid him in the prosecution of his work. The persons so employed were authorized by Brown to solicit risks, make surveys, take applications, countersign them as agents, and forward them to him at Kittanning. Upon receiving these Brown transmitted them to the company and

[Swan *v.* Watertown Fire Ins. Co.]

delivered policies to the parties insured. To take charge of the branch office at Indiana he employed H. S. Smullen. Among others Smullen solicited Warren to insure his property in the company. The amount of insurance agreed upon was $1500. Of this $1000 were to be placed on the dwelling-house, and $500 on the personal property in the house. The cash premium required, $16, was paid. Smullen had blank applications with him. He produced one partially filled, and Warren, at Smullen's instance, signed it. The parties then proceeded to Warren's residence to examine the property and finish the application. It was late in the evening when they reached the house. They made a partial examination of the property. Among the household goods there was a sewing-machine. Smullen wanted to insure it. Warren informed him that it was property owned by him and his brother, and declined to insure it. It then being late in the evening, and Smullen having an engagement for that night, the work was suspended, with the understanding that Smullen would return the next morning and the parties would then complete the application. No inquiries had been made up to this time as to encumbrances, and the questions in the application as to title, encumbrance and value of the land were not asked by Smullen nor answered by Warren. Smullen did not return the next morning, according to arrangement, but went to Indiana. Sometime during that week, after returning to Indiana, he filled up the balance of the application by inserting the sewing-machine, and the answers to the three interrogatories in relation to title, encumbrances and value of land. This was done in the absence of Warren, and without his authority, knowledge or consent. When the application was thus filled up by Smullen he countersigned it as agent, and forwarded it by mail to Brown, the agent at Kittanning. Brown transmitted it to the company. Sometime afterwards a large envelope, supposed to contain the policy of insurance, addressed to Warren, reached his place by mail. Warren was absent when it came, and it was laid in the clock on the mantel unopened. On the 15th day of October 1875, about two months afterwards, a fire occurred in the absence of Warren and his family, whereby his house with all its contents was destroyed, including the envelope which was supposed to contain his policy. The loss was total. Notice of the fire and loss of the policy was given. The company refused to pay, and this suit was brought. The company filed a copy of the policy, wherein it appeared that the sewing-machine was included as one of the items insured. It appeared in evidence that a judgment of $119 existed against the assured and Augustus H. Warren, his brother, which was a lien against the property at the time it was insured; that this judgment had been confessed by direction of Augustus, his co-defendant, and

[Swan *v.* Watertown Fire Ins. Co.]

that the assured was not aware of its existence at the time the insurance was taken.

One of the provisions of the policy was that "all statements and representations contained in any written or verbal application, survey, plan or description of the property herein insured shall be taken and deemed to be warranties on the part of the insured, and if the insured in any such written or verbal application, survey, plan or description, shall make erroneous representations or omit to make known any fact material to the risk, or if the interest of the insured in the property be any other than the entire unconditional and sole ownership of the property, for the use and benefit of the insured, or if the same or any part thereof shall be encumbered by mortgage, judgment or otherwise, and be not so stated to the company, and so expressed in the written portion of the policy, then, in every such case, and in either of said events, this policy shall be null and void."

At the trial before Blair, P. J., of the Fortieth Judicial District, holding special court, the plaintiff offered in evidence the copy of the policy furnished by the company. The defendant objected to its admission unless accompanied by the application which by the terms of the policy was made part thereof. The company having retained possession of the application, produced it. This was the first knowledge the assured had of its being filled up by Smullen in the manner stated. The company objected, that the policy made the statements contained in the application warranties of the truth thereof, that the assured had broken these by false representations as to his ownership of the sewing-machine, and by false answers to the interrogatory as to encumbrances. The plaintiff replied by proof of the fraudulent making and altering of the application by Smullen, who acted in the premises as agent of the company, and alleged this made the application void as against the plaintiff; and requested the court to instruct the jury as follows:

1. That if the jury find from the evidence that the company appointed Brown its agent in the counties of Armstrong, Indiana, Jefferson, Clarion and Butler, to solicit insurance, agree upon rates, receive premiums, make suveys, take applications, fill up policies signed in blank by the proper officers of the company, and deliver the same to the insured; that in pursuance of said appointment he established his principal office at Kittanning, and opened branch offices at Indiana, Brookville, Clarion and other places in the counties aforesaid, and employed clerks and others to aid him in the business aforesaid, with the knowledge of the company, then in such case the acts of his employees in the premises are his acts, and, as such, are binding upon the company.

2. That if the jury further find that Brown, in pursuance of his aforesaid agency, employed Smullen to aid and assist him in the aforesaid insurance business, in the county of Indiana, that in

pursuance of his employment Smullen solicited the plaintiff for the risk in suit, and procured the application in evidence to be signed by the plaintiff, with that part embracing the interrogations in blank, without reading or otherwise making known to him the purport thereof; and that he afterwards filled in the sewing-machine and the answers to the interrogatories in plaintiff's absence, and without his authority, knowledge or consent, then, and in such case, the application is void, and is not binding upon the plaintiff.

The court refused to so instruct the jury and, inter alia, charged:

" That when Warren accepted the policy, he adopted Smullen's work. * * * He must be taken as assenting or acquiescing in what Smullen did. The evidence, we think, is insufficient to reform the contract or to make a contract different from that expressed in the papers. Your verdict should therefore be for the defendant."

Verdict accordingly, when plaintiff took this writ and alleged that the court erred in refusing to charge as requested above and in the portion of the charge quoted.

*Weir & Gibson, John N. Banks* and *John R. Wilson,* for plaintiff in error.—Smullen solicited the risk, made the contract, received the premium, countersigned the application with his own signature as the company required its agents to do; then forwarded all to Brown, the general agent, who transmitted them to the company. Thus the company received, accepted and appropriated to its own use the fruits of Smullen's agency, and thereby recognised him as its agent, and it was their duty under the law to certify his name to the insurance commissioner, that he might thereby be lawfully authorized to act for it: Act 4th April 1873. But if the company neglected this duty and permitted Smullen to do business for it without license, in violation of law, it was the fault of the company, and it cannot take advantage of its own wrong. The company was affected by the fraud of Smullen in altering the application: Musser *v.* Hyde, 2 W. & S. 314; Story on Agency, sect. 452; New York Life Ins. Co. *v.* McGowan, 6 Am. Law Record 190; Massachusetts Life Ins. Co. *v.* Eshelman, 30 Ohio St. 647. Acquiescence in legal contemplation is a fixed and unbiased determination not to impeach the transaction. It may be proved either by acts evidencing acquiescence, or by the mere lapse of time during which the transaction has been allowed to stand. It is a question of fact, and not purely of law: Kerr on Fraud and Mistake 300; Irving *v.* Thomas, 6 Ship. 418; Cumberland Coal Co. *v.* Sherman, 20 Md. 117. Warren could not have acquiesced in, adopted or ratified the fraud when he had no knowledge of its existence

[Swan *v.* Watertown Fire Ins. Co.]

*Silas M. Clark,* for defendant in error.—The right to impeach a transaction on the ground of fraud may be lost by confirmation, acquiescence or delay. A transaction originally voidable on the ground of fraud may become unassailable in consequence of the acquiescence of the injured party in the state of affairs which has resulted from the fraudulent act: Kerr on Fraud and Mistake 296. Warren was of course fully apprised of his right to impeach the transaction, as .he knew the application was to have been returned to him for complete execution, and was not. The material portions of the application were unsupplied when Smullen took it away, and Warren knew the transaction was impeachable, and by examination of the policy which the company put into his hands, " he knew, or might or ought with reasonable or proper diligence, to have known of the nature, extent and character of that fraud :" Kerr on Mistake, ch. 1, sect. 6. He therefore acted knowingly and advisedly. A person who is injured by fraud must be prompt and energetic in seeking redress. Warren by his course accepted the policy and then acquiesced in and approved Smullen's work. We maintain that Smullen was in no sense the agent of the company for any purpose, or possessed any power whatever under the law to represent the company, and that throughout this whole transaction he was the agent of Warren and not of the company.

Mr. Justice TRUNKEY delivered the opinion of .the court, November 15th 1880.

The application and policy constitute the contract, unless some matter was fraudulently or mistakenly inserted or omitted, changing it to something else than was agreed upon. Each party pretends not fully to have known the contents before the burning of the property insured; the company asserts it had not seen the application and had no knowledge of Smullen's agency, and Warren says he never read the policy and that the application was altered after he had signed and delivered it to the agent. Yet both claim they made an agreement; one that it is evidenced by the policy and application together, the other that the policy alone is the contract. At the trial the defendant withdrew the testimony given on its part, and the cause was submitted upon the plaintiff's; whereupon the court instructed the jury to find for the defendant. Hence, in determining whether the instruction was erroneous, the testimony must be treated as true, with inferences which the jury could properly have drawn in favor of the plaintiff.

Brown was agent for the company doing business in the counties of Clarion, Jefferson, Indiana and Armstrong, with numerous persons employed under him. If such applications as Warren's were forwarded to the company it had notice of the sub-agency—if Brown retained them and issued the policies thereon, then the notice to him was notice to the company. When a general agent

[Swan *v.* Watertown Fire Ins. Co.]

in the due prosecution of the business of his principal, employs another in a branch of the business, the acts of the sub-agent have the same effect as if done by the general agent. In such case the sub-agent becomes the agent and direct representative of the principal : Massachusetts Life Ins. Co. *v.* Eshelman, 30 Ohio St. 647. At the foot of the application appear these words : " I fully recommend the applicant and risk. H. S. SMULLEN, agent." Then follow " remarks of agent" where he answers interrogatories. This is the part of the contract signed by Warren and retained by the company.' Smullen solicited and made out the application, received the premium, forwarded the same to Brown, and the policy was sent to the applicant. It is a natural inference that he was the company's agent. It may be, as alleged, that in so acting he rendered himself liable to a penalty for violating the statute relating to foreign insurance companies. These companies doing business in this state without having complied with the provisions of the statute, for that reason, may not enforce their contracts ; but cannot set up their turpitude to defeat actions on their contracts brought by innocent persons. Their agents may neglect to procure the prescribed certificates, but that shall not avail the principals to avoid their contracts for insurance. The statute does not impose upon the insured the duty of seeing that the insurer and its agents have complied with the statutory requirements. That a company soliciting and receiving the consideration for insurance, may avoid its obligation on the ground that either itself or its agent has violated the law, is a proposition repugnant to familiar elements of the law.

After the application was signed by Warren and taken by the agent, it was changed by inserting the sewing-machine and the answers to three interrogatories respecting title, encumbrance and value of the land. This was done by the agent without the knowledge of either party to the contract. But if the fraudulent act was within the apparent limits of the agent's employment, although not within the actual authority conferred upon him, the principal will be liable. The company invited the public to deal with its agent in relation to a branch of its business, and so long as he is within the apparent scope of the employment intrusted to him, the law will hold the principal liable for his acts, and charge it with his knowledge, whether the fraud is upon itself or third persons to the extent the tort affects third persons. This is but a practical application of the well recognised rule, that where one of two parties must suffer loss by reason of the fraud of an unfaithful agent it must be the company and not the innocent assured : Massachusetts Life Ins. Co. *v.* Eshelman, *supra.* We think the plaintiff's first and second points sound, but they do not determine the case in his favor.

Warren received the policy in due time, and no misrepresenta-

[Swan v. Watertown Fire Ins. Co.]

tions, concealments, or forgery of its contents are in the way of its enforcement, taken by itself. It contains these stipulations: "If the interest of the insured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, or if the same or any part thereof shall be encumbered by mortgage, judgment or otherwise, and be not stated to the company, and so expressed in the written portion of the policy, then and in every such case, and in either of said events, this policy shall be null and void." These are stipulations in the policy, as binding upon the assured as if he had made no written application. He is not held to the warranties of representations in the application because of the fraud upon him; but that fraud does not affect the terms of the policy independent of the application. When he accepted the policy he accepted its terms. He was not the sole owner of part of the property insured, and part was encumbered by judgment, neither of which facts was expressed in the written portion of the policy. This was plain and he could readily see that his policy was void. To say that he did not read the policy and, therefore, is not bound by its terms, sounds as ill in him as in the company to say it did not know Smullen was its agent. Warren held the policy more than two months before the fire. Not a circumstance is proved tending to induce him not to read it; but instead, he says the application was not finished when he signed it, that he was not satisfied about the sewing-machine being put in, and that he instructed Smullen to fill it up. Then he knew facts to incite him to read the policy. After the lapse of a reasonable time, without objection, he is presumed to have accepted it. There is no evidence which ought to overcome that presumption. The learned judge of the Common Pleas ruled that he accepted it by retaining it so long, and that was not error. He well remarks that the policy might have been returned and premium demanded, if not satisfactory. Although Warren was not prejudiced by anything wrongfully written in the application by the company's agent, he was bound by what he held in his own hand. In this case there is no difficulty about the facts and it must be presumed that the assured assented to the policy as written.

It was urged by the plaintiff's counsel that whether the assured is bound to the terms of the policy by having kept it an unreasonable time is a question of fact for the jury. Where the facts are not clearly established, or where the question of time depends on other controverted facts, or where the motives of the party enter into the question, perhaps the whole must necessarily be submitted to the jury. But what is a reasonable time is a question of law, and where the facts are clearly established, must be determined by the court. It has been settled that where no time is specified for the performance of a contract, that the law implies that it shall be performed within a reasonable time; also that a reasonable time is

[Swan *v.* Watertown Fire Ins. Co.]

a question of law: 2 Parsons on Cont. 535, 661, and cases cited in notes. The reasons are quite as strong that the law implies that if the assured does not return the policy within a reasonable time he accepts, and that the court must determine what is a reasonable time. We are of opinion that it was not error to direct a verdict for defendant.

Judgment affirmed.

Justices MERCUR and STERRETT dissented from that part of the opinion which imputes legal negligence to the act of retaining the policy, also from the judgment.