Kuhns et al. *v.* New York Life Ins. Co., Appellant.

Argued May 15, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Geo. Ross Hull,* of *Snyder, Miller & Hull,* for appellant.—Where the proofs of death submitted by the beneficiaries of a life insurance policy show that the insured in his application falsely represented a material fact which was within his own knowledge, and this evidence is not contradicted, the court should direct a verdict for defendant: Felix v. Life Ins. Co., 216 Pa. 95; Siebelis v. Ins. Co., 19 Pa. Superior Ct. 221; Baldi v. Ins. Co., 24 Pa. Superior Ct. 275; Martin v. Ins. Co., 83 Pa. Superior Ct. 509.

Where, in addition to the uncontradicted oral evidence of a candid and credible witness for defendant, there is admittedly genuine and unattacked documentary evidence showing that the insured in his application for life insurance falsely represented a material fact which was within his own knowledge, the court should direct a verdict for defendant: Hartig v. Ice Co., 290 Pa. 21; Hamilton v. R. R., 227 Pa. 137; Walters v. Bridge Co., 234 Pa. 7; Shannon v. Knights of Maccabees, 54 Pa. Superior Ct. 634.

Where an applicant for life insurance represented in his application that he had not been in a hospital for observation or treatment, when in fact he had been for a period of four days; and that he had not consulted or been examined or treated by a physician within five years, when in fact he had consulted a physician six months previous and had been treated by him for a period of three months, and had consulted and been treated by another physician eleven days previous, the questions of the insured's knowledge, intention and good faith in making such representations were not for the jury: Suravitz v. Ins. Co., 244 Pa. 582; March v. Ins. Co., 186 Pa. 629; Gimbel v. Ins. Co., 95 Pa. Superior Ct. 1; Oplinger v. Ins. Co., 253 Pa. 328.

*Rufus C. Elder,* with him *William W. Uttley,* for appellee.—In an action on a policy of life insurance, where the company set up as a defense that the insured had consulted a physician within three years prior to the application, and had stated to the contrary in making such application, proofs of death are admissible as prima facie evidence of such consultation, when they averred that the same were made, but they are not conclusive: Martin v. Ins. Co., 83 Pa. Superior Ct. 509; Baer v. Ins. Co., 256 Pa. 177; Lewis v. Ins. Co., 57 Pa. Superior Ct. 406; Baldi v. Ins. Co., 24 Pa. Superior Ct. 275; Holleran v. Ins. Co., 18 Pa. Superior Ct. 573; Siebelist v. Ins. Co.,

19 Pa. Superior Ct. 221; South Side Trust Co. v. Ins. Co., 74 Pa. Superior Ct. 566.

The answers of the insured in this case were representations and not warranties, and, under the evidence in the case, the truth of the answers, whether they were correctly written down, and the good faith of insured were in making the answers, all for the jury: Suravitz v. Ins. Co., 244 Pa. 582; Baer v. Ins. Co., 256 Pa. 177; Skruch v. Ins. Co., 284 Pa. 299; Livingood v. Ins. Co., 287 Pa. 128.

If, at the time of issuing an insurance policy, the company knows that one of the conditions thereto is inconsistent with the facts, and the insured has been guilty of no fraud, the company is estopped from setting up a breach of the condition and the same rule prevails when the company ought to have known the facts constituting the alleged breach: Jezorski v. Ins. Co., 27 Lack. J. 138; Hoffman v. Ins. Co., 274 Pa. 292; Caldwell v. Fire Assn., 177 Pa. 492.

Declarations of an insured, made after a life insurance policy has gone into force, cannot be received in evidence to affect the rights of the beneficiary in a suit by the latter to enforce the contract of insurance: Hermany v. Life Assn., 151 Pa. 17; Oplinger v. Ins. Co., 253 Pa. 328.

OPINION BY MR. JUSTICE SADLER, July 1, 1929:

Frederick A. Kuhns, a dental student in the University of Pennsylvania, applied, on August 29, 1924, to the defendant for insurance upon his life to the amount of $5,000, naming his mother as beneficiary. His application had attached thereto the report of the company's medical examiner, Dr. Swigart, who was also the insured's family physician, setting forth therein certain questions and answers relating to the past and present physical condition of the insured. The usual clause was appended, setting forth that the statements made were to be considered as representations and not warranties,

and the truthfulness of the declarations was certified to by Kuhns, an immaterial fact where the answers given are shown to have been made in good faith: Evans v. Metropolitan Life Ins. Co., 294 Pa. 406. The policy was issued on September 5th, based on the report of the company's agent, and, on October 13th, following, a one-half interest therein was assigned to Shunkwiler, one of the present plaintiffs. The premiums provided for were regularly paid and accepted. In January of 1925, Kuhns became ill and removed to a fruit farm, where he worked until his death on April 6th, following.

The required proofs of loss were prepared by the company's agent, sworn to and signed by the beneficiaries, two doctors, and a friend of deceased. Payment demanded was refused because of the discovery of alleged misstatements made in the application, and return of the amounts advanced was offered in satisfaction of the claim. This tender was refused, and an action of assumpsit to recover on the policy instituted. The defense interposed was the making of incorrect answers to certain questions in the application, intended to furnish information as to the desirability of the risk. The company claimed that the information supplied was untrue, which fact was known to the deceased, and, as a result, fraud was perpetrated, voiding the policy.

At the trial, there were offered the admissions apparent by the pleadings to the effect that the insurance contract was entered into; that death had occurred; proofs of loss furnished; refusal of payment demanded, and that the plaintiffs were the persons, if any, entitled to recover. The burden then shifted to defendant to establish the fraud, which led to the issuance of the policy, and this it attempted to do by showing it was misled by the untruthful answers given to questions 7, 10 and 11 propounded by its examiner.

The trial court submitted the matter to the jury in a fair, adequate and impartial charge. It declined all but one of the points submitted by plaintiffs, but instructed

correctly, as requested, that "where misstatements have been set forth inadvertently and made without intention of concealing the truth, a recovery is permissible, and the question of making the answers in good faith is for the jury." All of the requests of defendant, except that for binding instructions in its favor, were affirmed without qualification. Specifically referring to each of the replies in dispute, the jury was told they were material, and, if untrue and intentionally made, the verdict must be in the company's favor. The finding was for the plaintiffs, and this appeal has been taken from the refusal to enter judgment n. o. v., or to award a new trial.

The answers of the insured, written by defendant's examiner on the application, are to be treated as representations and not warranties, an important distinction, under the cases, in determining the right to recover on the policy issued. It is undoubtedly the law that, if of the former class, as here, the making of an untrue statement of a material fact, causing the company to act to its prejudice, vitiates the contract, but a forfeiture does not follow where there has been no deliberate intent to deceive, and the known falsity of the answer is not affirmatively shown. Mere mistakes, inadvertently made, even though of material matters, or the failure to furnish all details asked for, where it appears there is no intention of concealing the truth, will not have this effect: Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299; Suravitz v. Prudential Ins. Co., 244 Pa. 582; Livingood v. New York Life Ins. Co., 287 Pa. 128; Gimble v. Ætna Life Ins. Co., 95 Pa. Superior Ct. 1. The burden of proving the falsity of the answer, and that it was deliberately given, is on the defendant, who asserts it: Livingood v. New York Life Ins. Co., supra; Jackson v. State Mutual Benefit Assn., 95 Pa. Superior Ct. 56. Unless this situation is made apparent by undisputed proof, documentary or oral, the question is one for the jury, and is not to be declared as a matter of law by the court.

The first material inaccuracy here asserted rests on the negative answer to the question, "Have you been under observation or treatment in any hospital, asylum or sanitarium?" To establish the falsity of the reply given, the custodian of the records of the University Hospital, who did not personally know decedent, was called upon to produce a card, showing the admission of Kuhns to the student ward on October 30, 1923, and his discharge therefrom four days later. This writing indicated a Dr. Wilson was his physician, but he was not called to show that Kuhns was then under observation or treatment. Though the nurse, as a witness, stated that patients might be there for this purpose, the force of her testimony is destroyed when she declared that sometimes students were there admitted "simply to rest up, without medical attention or anything of that kind." The burden was on defendant to show the answer of Kuhns was false, and this evidence would not justify the court in declaring, as a matter of law, that it was untrue: McBride v. Sun Life Ins. Co., 90 Pa. Superior Ct. 35. A satisfactory explanation of the occurrence was elicited by defendant itself from the brother of deceased, who stated that, at the suggestion of a fellow student, he had sent the insured to the student's ward with the idea that he should be looked over by Dr. Wilson, but it did not affirmatively appear that he was ever examined. The facts presented were proper for submission to the jury, and this was done in a charge not open to complaint.

It is further urged that there was an intentional misstatement when the applicant answered "None," when asked "What physician or physicians, if any, not named above, have you consulted or been examined, or treated by within the past five years?" To show this reply to be untrue, and that it must have been known to be so by the insured, the proofs of loss were offered. These were, however, only prima facie evidence of the matters therein set forth, and subject to explanation and contradiction: Monaghan v. Prudential Ins. Co., 90 Pa. Superior

Ct. 392. An affidavit of Dr. Wilson appeared therein showing treatment from April to June of 1924 for headache, dizziness or nervousness, though the presence of any disease was declared to be uncertain; of Dr. Krepps, showing his treatment did not begin until January, 1925, though, on oral examination, he fixed August 20, 1924, making it necessary for the jury to determine whether the true date was the one written, which postdated the application, or the earlier one which antedated it. Further witnesses testified to physical symptoms observed on two occasions in the summer of 1923, which, though contradicted, might indicate the presence of epilepsy. Dr. Swigart, medical examiner of defendant, was called as the family physician at both times, and diagnosed the attacks as merely acute indigestion.

Standing alone, the evidence referred to would strongly indicate that the applicant had been treated by doctors before the application was made, though he answered in the negative. The weight of this testimony, as indicating that a knowingly false statement was made, loses its force, however, when considered with the other facts adduced. Doctor Swigart was the agent of the company. He had personally known of the physical condition of Kuhns, and attended and treated him in 1923 for indigestion, which was a temporary ailment. In a previous application for insurance to the same company, on file at its office, attention had been called to this matter. The brother of the insured was present when the examination, now in question, was made. He testified that the answer given to the question in dispute was, "Nothing except that you know of doctor," and Swigart, instead of using these words, wrote "None." This was not denied by the doctor, who could not recollect what occurred at the time.

It was for the jury, therefore, to say whether the insured had intentionally made a false statement as to his former treatment. The accuracy and good faith of the agent, in writing down the applicant's answer, was a

matter for inquiry by the jury in determining whether the answer had been made in good faith: Suravitz v. Prudential Ins. Co., supra; Hoffman v. Mutual Fire Ins. Co., 274 Pa. 292. Swigart, agent for the company, had full knowledge of the previous history of the patient, and presumably of any medical attention received. At any rate the jury could so find, and the company cannot now complain if he failed to give in full the information possessed. Evans v. Metropolitan Life Ins. Co., supra; Hoffman v. Mutual Fire Ins. Co., supra; McGuire v. Home Ins. Co., 94 Pa. Superior Ct. 457. Appellant insists this narration of what actually occurred when the answer was given was inadmissible because not specifically referred to in the pleadings, which made no mention of the mistake in the written answer. It is now too late to complain on this ground, since the record shows the objection was not interposed when the testimony was offered, nor at any time during the trial, and was first raised on argument after verdict rendered.

The third intentional misstatement relied on in defense is the negative answer to the inquiry as to whether the applicant had any other ailment or disease of a serious character than those specifically mentioned in the sentences preceding. It would appear from the offer made that the reply to the examiner, "Nothing except what you know of," referred also to this question, but the testimony which follows apparently limits this qualification to the query as to other physicians already referred to. It will be remembered that there was on file with the company another application showing that Kuhns did have acute indigestion in 1923, which had been treated by Dr. Swigart and reported cured. The only intimation of an other ailment is found in the annotation on the proof of loss executed by Dr. Wilson, who was himself in doubt as to the presence of any disease, as shown by the words, "Diagnosis uncertain (Headache, dizziness, nervousness)," and did not declare any particular physical defect to be existent. Dr. Krepps did not describe a specific complaint, but said

the trouble was Kuhns had eaten too much, and he had advised him to take care of his diet. As stated by the court below, in view of the preceding inquiries, as to specific affections of various named parts of the body, the final question doubtless referred to some defined disease, other than those mentioned, and Kuhns was therefore justified in making the answer as written. Under the facts disclosed, the meaning of the question, and the truthfulness of the answer, or the presence of an intention to mislead and deceive by the reply, was for the jury: Baer v. State Life Ins. Co., 256 Pa. 177.

What has been said justifies the refusal of the court to enter a judgment for the defendant n. o. v. Though the evidence might have warranted a finding for the defendant, yet the court could not properly have so directed as a matter of law. A new trial also was asked because of the refusal to admit proof of a declaration made by Kuhns, after the rights of the beneficiaries had vested, to the effect that he had suffered fainting spells at intervals since 1922. "No matter what the law may be in other jurisdictions, it is established with us that the declarations of an insured, made after the policy has gone into force, cannot be received in evidence to affect the rights of the designated beneficiary, in a suit by the latter to enforce the contract of insurance": Oplinger v. New York Life Ins. Co., 253 Pa. 328; Hermany v. Fidelity Mut. Life Assn., 151 Pa. 17; Livingood v. New York Life Ins. Co., supra. Appellant contends the rule stated does not apply here, since the contract provided certain benefits for the insured if illness followed the issuance of the policy, and therefore such a declaration was admissible as a self-harming statement. This overlooks the fact that the present suit was not an action to secure rights granted by the contract to the insured, but one to recover the sum agreed to be paid to beneficiaries on his death, and whose rights had become fixed and determined when the policy was issued. The evidence proposed was properly rejected.

The judgment is affirmed.