Stein *v.* New York Life Insurance Company, Appellant.

Argued October 17, 1934.

Before TREXLER, P. J., KELLER, BALDRIGE, STADTFELD and PARKER, JJ.

*Arthur G. Dickson,* and with him *Louis H. Cooke,* for appellant.

*Frank Fogel,* for appellee.

OPINION BY KELLER, J., February 1, 1935:

This is an action by a beneficiary, Jennie Stein, on a life insurance policy taken out by her daughter, Kate Stein, the insured. The insurance company defended on the ground that the insured made false answers to certain questions propounded by the company's medical examiner, which formed part of the application for insurance. These answers were material to the risk and, although by the terms of the policy they were representations and not warranties, they were sufficient to avoid the policy if the false answers were made by the insured. They related to whether she had ever undergone a surgical operation; or been under observation or treatment in any hospital; or had ever consulted a physician for, or suffered from, any ailment or disease of the middle ear. The answers to these questions as they appeared in the medical examination forming part of the application were 'No.' As a matter of fact the insured had undergone an operation for the removal of some polyps from her nose about ten years before; and during, and following the course of this operation she had been treated in a hospital; and she had suffered from a running discharge from one of her ears for several years, for which she had received medical treatment, which ended about five years before she took out this insurance. The physician (Dr. Zacks), who attended her for these ailments, testified that there was a scar from an incision behind each ear which indicated a mastoid operation, but he had not performed them, and they did not appear to be recent.

The plaintiff showed in rebuttal that the insured had truly and correctly answered all the questions put to her by the company's medical examiner, and that the questions, the answers to which are here objected to, were not propounded by the examiner nor answered by the insured, but were inserted by the company's medical examiner after she had signed the application. There was some positive evidence in support of this position, which we shall refer to later. The trial judge left it to the jury to decide as a question of fact, whether the untrue answers relied on by the insurance company as a defense to the action were written in the medical examination paper, forming part of the application, before the insured signed it, or afterwards; holding that if they found the former to be the fact, there could be no recovery; if the latter, there could. The case is a close one, but in the light of the evidence hereinafter referred to, and the decisions of the Supreme Court in Suravitz v. Prudential Ins. Co., 244 Pa. 582, 91 A. 495; Feinburg v. N. Y. Life Ins. Co., 256 Pa. 61, 100 A. 538; Kister v. Lebanon Mut. Ins. Co., 128 Pa. 553, 18 A. 447; Dowling v. Merchants Ins. Co., 168 Pa. 234, 31 A. 1087; Howard Fire Ins. Co. v. Bruner, 23 Pa. 50, 57; Swan v. Watertown Fire Ins. Co., 96 Pa. 37; Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299, 131 A. 186; Kuhns v. N. Y. Life Ins. Co., 297 Pa. 418, 147 A. 76; Campdon v. Continental Assurance Co., 305 Pa. 253, 157 A. 464; Rathblott v. Royal Ind. Co., 310 Pa. 37, 164 A. 718; followed by this court in Carrozza v. National Life Ins. Co., 62 Pa. Superior Ct. 153; Fidelity Title & Trust Co. v. Metropolitan Life Ins. Co., 64 Pa. Superior Ct. 361; Soroko v. Woodmen of the World, 76 Pa. Superior Ct. 328,—See also, Ins. Co. v. Wilkinson, 13 Wallace 222; Continental Life Ins. Co. v. Chamberlain, 132 U. S. 304—we are of opinion that the lower court did not err in not directing a verdict for the defendant, as contended by appellant.

The following are some of the circumstances in evidence that support this ruling. In the first place the evidence rebuts any finding that the insured deliberately perpetrated a fraud on the defendant insurance company and took out insurance for her mother's benefit knowing that she was not an insurable risk, and expecting to enrich the beneficiary by the principal of the policy obtained in return for a few quarterly premiums. The evidence shows that the insured was in apparent sound bodily health; she had not had any recurrence of the trouble for which she had consulted Dr. Zacks for about five years; and what is most significant on this point, she was offered and refused a policy for $4,000 by this same insurance company, and only consented after persuasion by the company's agent, to accept the policy in suit for $2,000, the application for the $4,000 policy being used and attached as the application for the policy sued on. See Stein v. N. Y. Life Ins. Co., 311 Pa. 210, 166 A. 763, reversing 106 Pa. Superior Ct. 364, 163 A. 60. In the second place there is no evidence of *fraud* on the part of the insurance company's agent or the company's medical examiner, both of whom are still in the company's employ, thus distinguishing the case from N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519; Applebaum v. Empire State Life Assurance Society, 311 Pa. 221, 166 A. 768; Youngblood v. Prudential Ins. Co., 109 Pa. Superior Ct. 20, 165 A. 666; Price v. Mut. Life Ins. Co., 109 Pa. Superior Ct. 419, 167 A. 233. Nor by the beneficiary, as in the two last cited cases; she could not read and write English. The instructions of the company required the answers to be filled in by the medical examiner, not by the applicant. See p. 120a, where the medical examiner certifies "that I have asked each question exactly as set forth on the other side of this sheet [that is, on the 'Answers to the Medical Examiner'] and that the applicant's answers thereto are in *my* handwriting," etc. Two of

her brothers and a sister had agreed to take out life insurance policies at the same time and were examined just before her, and two brothers were in the room with her when the examination took place. While the form provides that the ''examination must be made in private; no agent or third person being present,'' the instruction was not observed. The company's agent so testified. The examination took place in the dining room of the insured's home. He was in the adjoining room. The insured's sister, Etta Stein, was the first to be examined by the company's doctor, and left the room before Kate Stein was examined. The preliminary questions as to family history were asked of and answered by this sister, who was first examined. These questions were not repeated, and certain other questions going into their health in detail were not propounded to the other applicants by the doctor nor the answers filled in by him at the time, but subsequently. Her brothers, Archie and Reuben, the first of whom applied and was examined for a policy at the same time, which he subsequently received, testified that they were in the dining room when Kate Stein was being interrogated by the medical examiner and that he did not ask and she did not answer the questions which the defendant contends were falsely answered, nor any of the specific questions as to her past health; in fact, one gathers from their testimony that the examinations followed Etta Stein's were somewhat perfunctory and not as complete as hers had been. The evidence would seem to warrant the inference by the jury that Etta Stein's was the only application which was fully answered and filled out by the medical examiner when she signed it and that as to the rest, in order to save time, the medical examiner asked such questions as he thought necessary and had the applicants sign the papers before they were fully filled out, inserting afterwards from their general appearance the answers to the other questions. The

medical examiner admitted that although the 'Medical Examiner's Report,' which was on the other side of the sheet containing the 'Answers to the Medical Examiner' above referred to, required him to make a thorough physical examination of the applicants, he had not examined Kate Stein's nose or ears, relying, as he said, on her answers to the questions before mentioned, and perhaps on her general appearance, which he reported to be healthy. He certified further, that he had examined her, in private,—which was not the case—, and had fully reviewed all the answers on both sheets, which was denied by the insured's brothers. Although four policies were issued by the insurance company, as of December 23, 1929, the date of the examination above—one to Etta Stein, one for $4,000 to Kate Stein (which she refused to take), one to Archie Stein, and one to Gersen Stein—and the agent of the company testified they were in the dining room together during the examination, the medical examiner swore that he had examined only the two girls. But the policy of Gersen Stein produced in court showed that the doctor had made the examination of that applicant on the same day that he examined Etta and Kate; and Archie testified that he had been given a rather cursory examination at the same time.

The evidence of Archie Stein was positive and definite. That of Reuben Stein less so. The company's medical examiner admitted that he had not complied with his instructions. His testimony was contradicted in some particulars by the company's agent and by the evidence of the insured's brothers and the policy of Gersen Stein.

In the peculiar circumstances of this case, we are not convinced that, under the decisions above cited, the court erred in submitting as a question of fact to the jury, (1) whether the insured had answered the questions relating to her previous condition of health

and they had been written down by the medical examiner prior to her signing the application, or (2) whether these answers had been written in by the medical examiner after the insured had signed the application, and without having been made by her; that in the former event there could be no recovery; in the latter, there could.

The case is different from those relied on by the appellant, where the insured, who could read, failed to read the answers inserted to the questions in the application before signing it. See Applebaum v. Empire State Life Assurance Society, 311 Pa. 221, 166 A. 768; Koppleman v. Commercial Casualty Ins. Co., 302 Pa. 106, 153 A. 121; Rinker v. Aetna Life Ins. Co., 214 Pa. 608, 64 A. 82; N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519. Here, the jury found the answers were not written in the application when the insured signed it, and therefore could not have been read by her.

The appellant also contends that the retention for a year, by the insured, of the policy, which contained these false or incorrect answers in the 'Medical Examination' attached to the application, amounted, in law, to an approval and adoption of the answers, and estops the plaintiff from alleging that they were not made by the insured. On this point the recent pronouncement of the Supreme Court in Rathblott v. Royal Indemnity Co., 310 Pa. 37, 40, 164 A. 718, is pertinent: "Nothing in the record would justify the conclusion that plaintiff was not entitled to accept his policy in the belief that defendant had prepared it in accordance with the understanding of both. 'The defendant cannot be released from its contract because the plaintiff, acting in good faith, accepted without examination the policy written by its agent': Dowling v. Merchants Ins. Co., 168 Pa. 234, 239, 31 A. 1087." In Kister v. Ins. Co., supra, which was also cited in the opinion in the Rathblott case, the Supreme Court said: "A copy of the application accompanied the

policy, and it is argued that Kister could and ought to have read it, and, if he had done so, he would have seen the answers were untrue. These are considerations which were properly addressed to the jury. We cannot say that the law, in anticipation of a fraud upon the part of a company, imposed any absolute duty upon Kister to read his policy when he received it, although it would certainly have been an act of prudence on his part to do so: Howard Ins. Co. v. Bruner, 23 Pa. 50; Insurance Co. v. Wilkinson, 13 Wall. U. S. 222. One thing is certain, however; the company cannot repudiate the fraud of its agent, and thus escape the obligations of a contract consummated thereby, merely because Kister accepted in good faith the act of the agent without examination." And this accords with common usage and experience. Not one person out of fifty, on receiving an insurance policy, makes a careful examination of the copy of the application attached to his policy to see if it is identical with the original application which he signed. He should not be expected to. He has a right to rely on its being in the same condition as when he executed it and that no change has been made in it to his detriment. Besides, if the copy attached to his policy is as reduced in size and indistinct in outline as the photostatic copies of such papers usually attached to policies of insurance in briefs and records on appeal, he could scarcely decipher it if he did scrutinize it.

This disposes of the assignments relating to the refusal of judgment non obstante veredicto.

As to the assignments relating to the rule for a new trial, the evidence of declarations by the insured made after the issuance of the policy, as to her condition of health before the policy was issued, was excluded in accordance with the decisions of the Supreme Court in Oplinger v. N. Y. Life Ins. Co., 253 Pa. 328, 98 A. 568, and Kuhns v. N. Y. Life Ins. Co., 297 Pa. 418, 147

A. 76. Besides, if we are right on the main question, the evidence was immaterial. The insured's knowledge that she suffered from ailments of the nose and ears and had been operated on because of them only became material in the event that she had made answers denying those facts in the application; and the court ruled that if she made those answers there could be no recovery. It assumed, in its charge to the jury, that if she made the answers she knew their falsity. Hence no harm was done appellant by its exclusion.

We do not feel that the verdict was so clearly against the evidence as to require a new trial. On the contrary we think the jury might very properly come to the conclusion they did.

The assignments of error are overruled and the judgment is affirmed.