# Arnold v. Metropolitan Life Insurance Company, Appellant.

*Evidence—Family relationship—Personal identity.*

Common reputation in a family connection as to who are members of the family is admissible, when no superior evidence is obtainable, or in connection with superior evidence to prove pedigree, legitimacy and marriage. Personal identity must depend almost entirely upon tradition.

In an action upon a policy of life insurance a witness may testify to statements made by the insured, where the identity of the person who made the statements with the insured depended, so far as the knowledge of the

witness went, upon information which he received from a member of the insured's family.

*Insurance—Life insurance—Evidence—Declarations.*

In an action against a life insurance company on a policy issued on the life of a father in favor of a son, declarations of the insured as to his health, made after the date of the policy, are inadmissible to avoid the policy.

*Insurance—Life insurance—Misstatements as to health.*

Where a person warrants in an application for life insurance, that he never had " disease of liver . . . . spitting or raising blood," the policy is avoided where the evidence shows that shortly before the policy was issued, two physicians had treated him for liver trouble, and that he had consulted one of the physicians about spitting blood.  In such a case it is immaterial that the spitting of blood may have resulted from the breaking of certain ribs to which the insured referred in his application.

If the liver complaint and the spitting of the blood were of sufficient importance to induce the insured to consult a physician, they were of sufficient importance to be incorporated in the application for insurance so as to put the company upon its guard, and to enable it to make such inquiry and examination as would satisfy it in regard to the character of the disease of the liver and the spitting of blood.

Argued March 11, 1902.    Appeal, No. 30, March T.,.1902, by defendant, from judgment of C. P. Mifflin Co., Aug. T., 1900, No. 117, on verdict for plaintiff, in case of Daniel J. Arnold v. Metropolitan Life Insurance Company.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit upon a policy of life insurance.    Before BAILEY, P. J.

From the record it appeared that the policy in suit was issued on the life of George Arnold in favor of his son, the plaintiff, Daniel J. Arnold.    The policy was dated May 27, 1899. F. W. Glacier, a witness for the defendant testified that in the summer of 1899, he had a conversation with George Arnold, and that the latter had told him that " he had been doctoring for over one year."    The witness stated that he knew that it was with George Arnold with whom he had the conversation, because he was told so at the time by Mrs. Kitting, mother-in-law of the plaintiff.

The insured stated in his application that he had never had " disease of liver . . . . spitting or raising blood."    Two physicians testified that they had treated the insured for liver

trouble shortly before the date of the policy, and one of them testified that the insured had consulted him in reference to the spitting of blood.

The court charged in part as follows:

The defendant does not allege, nor has it offered any testimony to show, that the assured had any of the diseases mentioned in this paragraph except disease of the liver, and that he spit blood. What is the evidence on these questions? Dr. Reber testifies that in February or March, 1899, prior to making the application, the assured came to his office and complained about his liver and had a "sore stomach" and in December, 1899, he treated him for enlarged liver. One or two weeks after the assured had his ribs broken by falling off a roof the assured told him he spit up some blood. Dr. Baker said he had prescribed for George Arnold between the 17th and the 20th of April, 1899; he did not say what he treated him for, but to the best of his recollection for stomach and liver trouble. [Mr. Glacier said some man, whom he did not know but whom he was told was the assured, told him that he was doctoring for over a year. There is no evidence that the person with whom he was talking was George Arnold, the assured, therefore his evidence is of no value.] [1]

There is no warranty that the deceased had no disease of stomach and the parties have not made such disease material to this risk, and we cannot declare the policy void as a matter of law even if the assured had such disease prior to making this application. We do not recall any evidence which tends to show that the liver trouble for which Drs. Reber and Baker prescribed was a permanent disease of that organ, or such a complaint which would affect the general health of the assured.

[It seems to me that the mere temporary derangement of the liver or stomach could not have been understood by either party to this contract as a "disease" of those organs. There is no evidence that their derangements did not readily yield to the usual remedies prescribed for such disorders, or that they were other than such ordinary derangements of these organs which a very large number of the people residing in this climate are subject to. We, however, submit the question to you whether the testimony shows that the assured had a disease of the

liver.] [2] If you find that he had, then we say to you, the plaintiff cannot recover. As we heretofore said, Dr. Reber testified that the assured told him a week or two after he broke his ribs that he spit some blood. The assured did not say and the doctor did not know where the blood came from. There is no evidence that the assured spit blood other than Dr. Reber's recollection of a declaration which the assured made to him. On the other hand, there is evidence that he told his brother Thomas that he did not spit blood. All persons with whom he stayed and made his home during the last year of his life and who attended and waited upon him during his last illness testified they never saw any indications of his having spit blood.

We do not feel warranted in declaring this policy void upon such vague testimony which was wholly the recollection of but one witness of a loose declaration of the assured, uncorroborated by any other fact or circumstance in the case. It would be too narrow a construction of that part of this policy to hold that the mere spitting of blood was sufficient to avoid it without any evidence going to show that it indicated some derangement of the system that would increase the risk assumed by the insurance company. The blood referred to may have arisen in the mouth.

In the third paragraph the assured stated that he was in sound health. We do not construe this statement to mean that an applicant for insurance must be in perfectly sound health, but that his health is in such condition as is usually enjoyed by men of his age. Whether it was or not is a question for you to determine. If it was not of such condition then the plaintiff cannot recover.

In the fourth paragraph the assured states : The following is the name of the physician who last attended me, the date of the attendance, the name of the complaint for which he attended me, " Dr. Reber, Painterville, Pa., Jan., '99, three ribs broken." The defendant alleges that this was untrue in that his ribs were broken in February instead of January. [The application does not state in what part of January his ribs were broken, whether the beginning or ending of it, and if you believe the statement made by the assured that they were broken in January was made in good faith, and was substantially correct, although it should turn out they were broken in February, it seems to me,

it would not be sufficient to avoid this contract. I do not feel justified in saying as a matter of law that a few days or even a couple weeks' discrepancy between the time accident actually happened and the recollection of the assured as to when it did happen should avoid this policy. Whether the statement that the ribs of the assured were broken in January instead of February if not literally true but made in good faith, were material to the risk, is submitted for your determination. If you find that they were material, then the plaintiff cannot recover.] [3]

The defendant alleges that the assured's statement in the fifth paragraph, that he had not been under any care of the physician within two years unless as stated in the previous line, was untrue. The line referred to in the fourth paragraph, is that Dr. Reber had attended him for broken ribs. That is, Dr. Reber was the last physician who attended him and that was for broken ribs. The only evidence on this point is that the assured called on Dr. Reber and Dr. Baker perhaps three or four times within two years prior to the date of his application, that he had got some medicine from them at such times for his liver or stomach when temporarily deranged, and Dr. Reber visited him twice. He was not under the continuous oversight of either of these physicians for any length of time, although Dr. Baker says he visited him twice but does not remember for what he treated him. We do not think the occasional calling upon these physicians for medicine to correct a disordered stomach, or an occasional visit to him by the physician was within the contemplation of the assured or the company at the time of receiving or making this application and issuing the policy. The question, therefore, for you to determine is whether the failure to inform the company of these occasional treatments received from Drs. Reber and Baker were material to this risk and should the assured have informed the company at the time he made his application of having received such treatment and medicine. Unless you find all these questions in favor of the plaintiff, he cannot recover and your verdict should be for the defendant.] [4]

Verdict and judgment for plaintiff for $511.39. Defendant appealed.

*Errors assigned* among others were (1–4) above instructions, quoting them.

*W. W. Uttley*, of *T. M. Uttley & Son*, with him *James A. Stranahan*, for appellant.—The court should have submitted to the jury the testimony of F. W. Glacier without telling them that it was of no value. The effect of this remark was to withdraw it from their consideration.

No principle of law will enable a party who guarantees a fact upon which a contract of insurance is based, which fact is afterwards found not to exist, to enforce the contract: Hartman v. Keystone Ins. Co., 21 Pa. 466; Commonwealth Mutual Fire Ins. Co. v. Huntzinger, 98 Pa. 41; United Brethren Mutual Aid Society v. White, 100 Pa. 12; United Brethren Mutual Aid Society v. O'Hara, 120 Pa. 256; Smith v. Northwestern Mutual Life Insurance Company, 196 Pa. 314.

The Act of June 23, 1885, P. L. 134, P. & L. Dig. Col. 2382, has not changed the law as to warranties which are material to the risk: Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527.

The fact that trouble for which a physician has been consulted or called in is not a serious illness makes no difference: United Brethren Mutual Aid Society v. O'Hara, 120 Pa. 256; Cushman v. United States Life Ins. Co., 70 N. Y. Ct. of Appeals, 72; Wall v. Royal Society of Good Fellows, 179 Pa. 355; March v. Metropolitan Life Ins. Co., 186 Pa. 629; Smith v. Northwestern Mutual Life Ins. Co., 196 Pa. 314.

*A. Reed Hays*, for appellee.—While the court did express an opinion as to the value of the testimony of F. W. Glacier, it was not withdrawn from the consideration of the jury.

A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy void: 3 Joyce on Insurance, sec. 2004.

A policy of insurance is to be construed most strongly against the insurer: Metropolitan Life Ins. Co. v. Drach, 101 Pa. 278; Wall v. Royal Society of Good Fellows, 192 Pa. 577.

Statements made by the applicant for life insurance which are in fact incorrect and untrue will not avoid the policy, if they are immaterial to the risk and are made in good faith and in the belief that they are true: Hermany et al. v. Fidelity

Mut. Life Assn., 151 Pa. 17 ; Dietz v. Metropolitan Life Insurance Co., 168 Pa. 504; Meyers v. Woodmen of the World, 193 Pa. 471 ; March v. Metropolitan Life Ins. Co., 186 Pa. 629.

Where there is a doubt as to whether the matter warranted was material, the question of its materiality must be submitted to the jury : Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527 ; Schwartz v. Metropolitan Life Ins. Co., 5 Pa. Superior Ct. 285 ; Dietz v. Metropolitan Life Ins. Co., 168 Pa. 504.

OPINION BY BEAVER, J., April 21, 1902:

1. F. W. Glacier, a witness for the defendant, was called to testify to a conversation which he had with George Arnold, the insured, after the application for the insurance had been made and the policy issued. The identity of George Arnold, so far as the knowledge of the witness went, depended upon the information which he had from Mrs. Kitting, the mother-in-law of the plaintiff. He found the person, with whom he had the conversation and whom he regarded as George Arnold, sitting in front of the house of the woman who gave him the information in regard to the identity of George Arnold, and in conversation with him he found him very hard of hearing. The insured was admittedly hard of hearing. The testimony was received and submitted to the jury but in submitting it the court said : " Mr. Glacier said some man, whom he did not know but whom he was told was the assured, told him that he was doctoring for over a year. There is no evidence that the person with whom he was talking was George Arnold, the assured ; therefore his evidence is of no value." If the testimony was competent, the jury was to determine as to its value. If incompetent for the reason that there was no evidence that the person with whom the witness was talking was George Arnold, it should have been ruled out. We think there was evidence of Arnold's identity. Personal identity must depend almost entirely upon tradition. If the witness had asked the person with whom he talked if he was George Arnold and the reply had been in the affirmative, this would have been evidence of the same character as that upon which the witness relied, because we must all ultimately rely upon tradition for all that we know as to our personal identity. " Common reputation in a family connection as to who are members of the family is ad-

missible, when no superior evidence is attainable, or in connection with superior evidence to prove pedigree, legitimacy and marriage : " Pickens's Estate, 163 Pa. 14 ; 1 Wharton's Ev. sec. 205.  " On a question of personal identity of a legatee, evidence of name, personal appearance, conversations and the account the claimant gave of himself and his relatives and associates, ante motam litem, is competent: " Mullery v. Hamilton, 51 Am. R. 288.  In the very nature of the case, personal identity must depend upon tradition.  A mother knows her own offspring largely by what the nurse tells her and even a nurse, except where there are unusual physical peculiarities, would be unable to tell a year from the birth of a child whether that was the identical child at whose birth she was present.  If there were nothing else involved in this assignment of error, we would feel bound to sustain it.  But was the testimony competent evidence ?  On other grounds it was not, if we are to be governed by Hermany v. Fidelity Mut. Life Assn., 151 Pa. 17.  In that case, defendant offered in evidence the pension application of Lewis Hermany, which was objected to as incompetent and irrelevant.  The court ruled :  " It appearing that the policy was issued on January 6, 1887, and that the loss is payable to the wife of the insured and their children, and, in the event of their prior death, to revert to the insured, and, it appearing that the wife and children survive the insured, and the contract, therefore, for all practicable purposes being between the company and the wife and children, the subsequent statement made by the insured, when he applied for a pension in 1888, in other words, the subsequent declarations cannot be received to affect the beneficiaries in the policy."  This ruling and similar ones in regard to other evidence of a like character constituted the thirteenth, fourteenth and fifteenth specifications of error and, in regard thereto, Mr. Chief Justice STERRETT in his opinion says :  " We are not convinced that there was any error in overruling either of the offers of evidence recited in the thirteenth, fourteenth and fifteenth specifications respectively. The reasons suggested by the court appear to justify the action complained of."  It is to be regretted that the ruling upon this subject in that case was not more fully discussed but, taking the ruling as it stands, we are bound by it and, if correct— and it is not for us to question its correctness—the testimony

of Glacier was not competent and should have been ruled out. For this reason, therefore, and for this alone, the first assignment of error is overruled.

2. In order to secure the issuance of a policy by the defendant, the insured made a statement containing the following extracts: "I hereby apply to the Metropolitan Life Insurance Company, through its intermediate branch, for $500 insurance.

"To induce the said company to issue said policy and as consideration therefor, I warrant and agree, on behalf of myself and of any other person who shall have or claim interest in any policy issued under this application, as follows:

"2. I have never had any of the following complaints or diseases: . . . . disease of liver . . . . spitting or raising blood. . . .

"3. I am now in sound health. . . .

"4. The following is the name of the physician who last attended me, the date of the attendance and the name of the complaint for which he attended me . . . . Dr. Reber, Painterville, Pa.; January, 1899; three ribs broken.

"5. I have not been under the care of any physician within two years, unless as stated in previous line."

On behalf of the defendant, Dr. J. H. Reber testified as follows: "Q. Did you or did you not treat George Arnold, the assured, during the spring of 1899 and, if so, when and for what complaints? A. I did. Q. When did you treat him? A. I treated him in February, 1899, for some broken ribs. Q. How many visits did you make? A. Two, I believe. Q. Did you treat him after that in the spring? A. Why, yes; a week or two afterwards he came to my office and complained and I gave him some medicine. B. What did you treat him for then? A. He had a cold and complained about his liver. Q. What other trouble did you treat him for? A. Why, stomach; he had a sore stomach. Q. Before that, within two years from May, 1899, did you not treat him? (Objected to and objections overruled.) A. Yes, sir, he came to my office at different times and got medicine. Q. What dates and in what year? A. Why, in 1898, I guess it was. Q. What time in 1898? A. I couldn't say. Q. Have you any books that would help you? A. Yes. Q. Look at them, if you can ascertain from them. A. (Witness refers to memorandum books.) He was at my office on

the 6th of December, 1898.   Q. Do you know what you treated him for at any of these times?   A. Well, he had a bad cold. Q. Anything else?   A. I treated him—I don't know whether it was at the same time that he had an enlarged liver and it was only a little bit sympathetic from the cold.   Q. You said you treated him for stomach trouble in March, 1899?   A. Yes, sir. Q. Did you ever treat him before that for stomach trouble? A. I may have.   Q. Do you know that you did?   A. I would not swear to it that I did.   Q. Did George Arnold, in the spring of 1899, tell you that he spit blood?   (After objections and they had been overruled)   A. Yes, sir, he did, about two weeks after he had those ribs broken.   He came to see me and he told me he had spit up some blood.   Q. (Mr. Hayes): Just repeat that.   About how long after the ribs were broken?   A. I don't know whether it was one or two weeks; it was in March when he was there for the medicine.   He told me he had spit up some blood."

Dr. W. M. Baker, called for defendant, testified: " Q. Did you ever prescribe for George Arnold in the spring of 1899? A. Yes, sir.   Q. What time?   A. It was between the 17th and 20th of April.   Q. To the best of your recollection what was the disease or trouble for which you prescribed?   (After some discussion.)   A. I don't remember positively what I did treat him for, but I think I treated him for stomach and liver trouble. I only think so; I am not positive; to the best of my recollection, it was stomach and liver trouble, but I am not positive." And later: " Did you give him anything else than quinine? A. Yes, sir, I gave him two or three different kinds of medicine, but I don't remember what kinds they were."

If the testimony of these witnesses was to be believed, the insured evidently did not, in his application, give such full and explicit answers to the questions therein asked as he was bound to do under his warranty.   The court, in its charge and in the answers to points, endeavors to minimize the diseases for which the insured sought medical advice and prescriptions by saying, among other. things: " We do not recall any evidence which tends to show that the liver trouble for which Drs. Reber and Baker prescribed, was a permanent disease of that organ or such a complaint which would affect the general health of the assured (evidently meaning insured)," and again: " As he heretofore

said, Dr. Reber testified that the assured told him a week or two after he broke his ribs that he spit some blood. The assured did not say and the doctor did not know where the blood came from. There is no evidence that the assured spit blood other than Dr. Reber's recollection of a declaration which the assured made to him. On the other hand, there is evidence that he told his brother Thomas that he did not spit blood." The testimony of the physician was that the insured told him that "he had spit up some blood," and this was repeated, when the plaintiff's attorney called his attention to it. In regard to this and also to the disease of the liver, it is perhaps enough to say that, if they were of sufficient importance to induce the insured to consult a physician, they were of sufficient importance to be incorporated in the application for insurance, so as to put the defendant upon its guard and to enable it to make such inquiry and examination as would satisfy it in regard to the character of the disease of the liver and the spitting of blood. This is the trend of all our decisions: United Brethren Mut. Aid Society v. O'Hara, 120 Pa. 256; Mengel v. Northwestern Mut. Life Ins. Co., 176 Pa. 280; Wall v. Royal Society of Good Fellows, 179 Pa. 355. In Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527, Mr. Justice GREEN, in delivering the opinion, said: "In a case of very recent occurrence, in which we have just filed an opinion (March v. Metropolitan Life Ins. Co., infra, 629) we have had occasion to consider and decide this identical question. We there determined that the act of 1885 had no application in cases where the answer was false and related to some matter material to the risk. Where it was doubtful whether the matter was material, the question of materiality must be submitted to the jury, but where the matter involved was palpably and manifestly material to the risk, the law was not changed either by the act of 1885 or by any decision before or since. Thus, in the present case, all the questions above enumerated were intrinsically and essentially material to the risk and have always been so held by all courts of last resort. As the act of 1885 made no change in the law, where the matter in question was material to the risk, the duty of the court to pronounce upon this subject was the same after as before the act. As a matter of course, there could not be any doubt that previous spitting of blood, or illness, or confinement to the house, by reason of illness, or medical service, or

the attendance of the physicians, or having consumption were subjects of the most serious and material character and they have always been so held by the courts." The plaintiff evidently seeks to avoid responsibility for the answer in regard to spitting blood that it arose from an internal injury inflicted by the accident in which the insured's ribs were broken and of which he spoke in his application; but, whether arising from this fact or from a disease of the stomach or from some other cause, if the physician is to be believed, the insured was sufficiently impressed with the fact to state it to the physician ; and, if he did so, it was of sufficient importance and of such materiality as to require an exception and specific statement in the case of the second paragraph of his application in which he said: " I have never had any of the following complaints or diseases: . . . . spitting or raising blood." He should also have named the several complaints for which Dr. Reber treated him and should have given the name of Dr. Baker as an attending physician. This would have put the defendant upon inquiry and would have enabled it to determine for itself whether or not the risk was one which it was willing to assume. The credibility of the witnesses was, under the circumstances, for the jury and we, therefore, send the case back for a retrial.

Judgment reversed and a new venire awarded.