## First National Bank and Trust Company of Bethlehem *v.* Shaffer, Appellant.

Argued April 17, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Lewis R. Long,* for appellant.

*M. B. Riskin,* of *Taylor, Schrader & Riskin,* for appellee, was not heard.

OPINION BY MR. JUSTICE DREW, May 6, 1940:

This is an action of assumpsit on a judgment collateral note not under seal. The note dated October 1, 1934, wherein Emily L. Shaffer appears as maker and Mary M. Laubach as endorser, is in the sum of $19,562.50, payable on demand. It is the last of a series of renewal notes, the first of which was executed by defendant on April 10, 1931. A verdict was returned for plaintiff in the amount of the note with interest from September 1, 1937. Defendant filed motions for a new trial and judgment n. o. v., which the court refused, whereupon judgment was entered on the verdict, and defendant appealed.

The case arose out of the following facts and relates back to the death of James F. Laubach, defendant's father, and husband of Mary M. Laubach, who was defendant's mother. He died on December 26, 1929, testate, naming as executrices, defendant and her mother, who are also the beneficiaries in equal shares in his estate. They renounced their rights to administer in favor of plaintiff, the First National Bank & Trust Company of Bethlehem, on or about January 14, 1930. The bank then qualified as administrator c. t. a. of the James F. Laubach Estate. The inventory and appraisement filed showed assets in the sum of $273,574.08. On January 24, 1930, plaintiff as administrator made a distribution to defendant on account of her share in said estate of $31,962.03. Early in 1931, the trust officer of plaintiff bank called at the home of defendant and told defendant and her mother that it was necessary to settle the estate and that there were still undistributed assets including stocks and securities as well as debts unpaid. He informed them that $37,000 was required to pay the remaining debts. At that time there was only $457.08 cash in the account. He put before defendant and her mother the question whether the securities in the estate should be converted into cash for the payment of the debts, or whether mother and daughter should buy the securities from the estate to give to the administrator the necessary cash to pay the estate's obligations, borrowing money to pay for said securities from plaintiff bank and pledging said securities with plaintiff to secure the loan. The latter plan was accepted and completed, defendant borrowing $19,562.50 to pay for the securities she purchased from the estate. The proceeds of the securities were then credited to the account of the James F. Laubach Estate and together with the sum received from defendant's mother used to pay the debts of the estate.

On or about June 12, 1931, after the account filed in the estate was confirmed, defendant, together with her mother, executed a release and receipt, each acknowl-

edging the receipt of $32,723.42 in full payment and sat-
isfaction of their one-half share of balance shown for
distribution in the estate, and released and discharged
plaintiff from payment of same and from any and all
claims arising out of the estate. By a written agreement
of May 3, 1937, they again released and discharged plain-
tiff of and from all claims, demands, etc., arising out of
the estate. The latter agreement was signed in the pres-
ence of and upon the advice of counsel who represented
defendant at the trial of this case.

In 1937, after litigation in the Orphans' Court of Le-
high County arising out of the Estate of James F. Lau-
bach, plaintiff and defendant entered into an agreement
of settlement wherein the bank agreed to accept 4% in-
terest due on the note in question to April 7, 1937, and
6% thereafter until the principal of said note was paid.
The agreement further provided that $18,450, received
from sale of real property of defendant, was to be turned
over to plaintiff to be applied to the payment of interest
on the note in question, taxes, money advanced by the
bank for maintenance of defendant's property, and other
similar items. Defendant freely admitted that she exe-
cuted this release and agreement, and there was no tes-
timony that she was induced to sign either because of
any misrepresentation or fraud upon the part of plain-
tiff.

The learned court below in his opinion said: "Exam-
ining the testimony of the defendant, it is indeed dif-
ficult to find anything in her statements which would
defeat plaintiff's claim. She admits the execution of
every exhibit, the notes, the checks, the stock powers at-
tached to the stock certificates, the receipt and release
and the agreement of May 3, 1937, which she executed in
the presence of her present counsel. She admits that the
stock was held by the bank as collateral, she admits that
she paid interest as long as she had money to pay inter-
est on the note in suit. Giving the defendant the benefit
of every favorable inference that can be deduced from

her testimony, we find nothing but contradictions and a feeling that because she never had physical possession of the proceeds of the loan, she never received its benefits."

We see no merit in the defenses offered to escape payment of this note—that it lacked consideration and that it was obtained through the abuse of a confidential relationship. Under adequate instructions, and doubtless because there is no evidence in the case to justify such conclusion, the jury found adversely to defendant upon both issues. Even granting that a confidential relationship existed, there is no evidence that would justify the conclusion that plaintiff was guilty of any breach of confidence, coercion, or any form of fraud, which is essential to set aside the note. Plaintiff fully met its burden of showing good faith and an entire freedom from deception on its part. No facts were adduced that would lead any reasonable person to the conclusion that plaintiff acted for Mrs. Shaffer otherwise than fairly and honestly. Plaintiff proved by competent evidence that good and valuable consideration was received by defendant for the note and that it was executed and delivered by her to the bank without fraud or mistake and with the full and complete knowledge on her part of all the facts surrounding the administration of the estate of her father. She entered into the agreement of May 3, 1937, in the same way, with full knowledge of the facts surrounding its execution; any parol evidence showing her interpretation and belief as to the effect of that contract is immaterial. She cannot now be heard to say that she was not acquainted with the contents of the note, the agreement, and the other instruments which she signed: *Greenfield's Est.,* 14 Pa. 489, 504; *Bosler v. Sun Oil Company,* 325 Pa. 411, 421. Any other conclusion than that reached by the jury and the learned court below would be a travesty of justice.

Judgment affirmed.