Prevete *v.* Metropolitan Life Insurance Company, Appellant.

Argued September 30, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*D. C. Jennings,* for appellant.

*Wm. R. Kalson,* with him *Harry S. Kalson,* for appellee.

OPINION BY MR. JUSTICE DREW, November 24, 1941:

Plaintiff is the beneficiary of an insurance policy issued on September 8, 1937, by defendant company on the life of her husband, Joseph Prevete, who died January 10, 1938. The jury returned a verdict for plaintiff. After denial of motions for judgment n. o. v. and for a new trial, judgment was entered upon the verdict and defendant company appealed.

The policy provides that all statements made by the insured, in the absence of fraud, are deemed to be representations. The application, which was signed by the insured following the recording of his answers as furnished by him, contains the following certificate: "I HEREBY CERTIFY that I have read the answers to the questions in Part A hereof [portion of application filled in by soliciting agent] and to the questions in Part B hereof [portion filled in by medical examiner], before signing, and that they have been correctly written, as given by me, and that they are full, true and complete, and that there are no exceptions to any such answers other than as stated herein." The policy and the application consti-

tute the entire contract of insurance between the parties.

Liability for the face amount of the policy was denied by defendant company on the ground that certain material representations were false and fraudulent and were known by insured to be such when he made them. The statements relied upon by defendant company are contained in the following questions and answers appearing in the application: "5. Have you ever been an inmate of, or have you ever received treatment at an asylum, hospital, sanatorium or cure? If yes, give date, duration, name of ailment and name of institution. No. 7. Have you ever received or applied for a pension or disability or compensation benefits from any government or from any municipal or private corporation or have you ever received or applied for any benefit under a policy of accident or health, workmen's compensation or fraternal insurance? If yes, state reason in full. No. 12. (e) Have you ever had any Accident, Injury or Occupational Disease? No. (g) Have you consulted a physician for any ailment or disease not included in your above answers? No. 13. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? If none, so state. None." It was admitted by plaintiff, both in her pleadings and her testimony, that, contrary to the answers to these questions, the insured had suffered a serious back injury while at work about four months prior to the execution of the application, which necessitated confinement in the Montefiore Hospital for five days, and treatment as an outpatient at that hospital for a period of three months. Plaintiff further admitted that the insured had not returned to his employment until about a month before making application for insurance, and that he had received workmen's compensation during this protracted period of disability. In her endeavor to avoid the effect of her admissions that these statements in the application were false, plaintiff denied that any misrepresentation was made by insured

to defendant company's medical examiner who put down the answers. At the trial, she was permitted over the objection of defendant company, to give testimony that she was present at the medical examination of insured, and that she heard him give true answers to the questions propounded to him by the examining physician, including information as to his occupational injury, as well as the hospitalization, medical treatment and compensation received for that injury. It was further. shown by plaintiff that insured was a foreigner, who, except for ability to sign his name, could neither read nor write the English language. Defendant company contends that because the application contains the certificate that insured had read the answers and that they had been correctly written as given by him, the learned court below erred in permitting plaintiff to introduce testimony in an endeavor to show that other answers than those appearing in the application had been given, and furthermore that judgment n. o. v. should have been entered in its favor.

Inquiries as to prior medical attendance are material to the risk and false answers thereto must of necessity permit the insurer to avoid the policy: *Reeder v. Metropolitan Life Ins. Co.,* 340 Pa. 503, 507. However, where, as here, the statements of the insured are made representations the test of recovery is the good faith of the insured: *Evans v. Penn Mutual L. Ins. Co.,* 322 Pa. 547, 551; and the burden of proving the falsity of the answers and that they were deliberately given rests upon the insurer who asserts it: *Kuhns v. New York Life Ins. Co.,* 297 Pa. 418, 423. If such falsity and the requisite bad faith affirmatively appear from the uncontradicted testimony of plaintiff's own case, the beneficiary cannot recover: *Bailey v. Pacific Mut. L. Ins. Co.,* 336 Pa. 62, 67. In the present controversy, plaintiff admits that the answers in the application are false. Then, in view of insured's unqualified certification that he had read these false answers before signing the application, that they

were correctly written as given by him, and that they were true and complete, how can it be said that he did not know the answers were false and did not deliberately intend to deceive the company? In such a situation the necessary and inevitable conclusion is that insured did not act in good faith when he signed the application, and the policy should have been avoided without the intervention of a jury. His beneficiary should have not have been heard to say that insured gave other answers than those set forth in the application. To permit such a thing would be to open wide the door to fraud. We said, in *Evans v. Penn Mutual Life Ins. Co.*, supra, 553: "The circumstances . . . attending the making of the statements may be such that the insured must be said to have been aware of their falsity at the time, or that an inference of fraud is otherwise irresistible . . ." That insured knew, under the circumstances of the instant case, that the answers recorded in the application were false when he certified that they were true is as patent as where a beneficiary attempts to establish good faith on the part of an insured who failed to report a serious and recent illness by the claim that he had inadvertently overlooked or had forgotten it. See *Freedman v. Mut. Life Ins. Co. of N. Y.*, 342 Pa. 404, 408-409.

Nor is plaintiff in any way aided in establishing the good faith of her husband by the fact that he could not read. Since the pronouncement of Chief Justice GIBSON, in *Greenfield's Estate*, 14 Pa. 489, 496, that if a party who can read "will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law", we have never deviated from it: *First Nat. Bk. & Tr. Co. v. Shaffer*, 338 Pa. 244, 248. This suit was instituted by plaintiff upon the policy and upon the application as part thereof, without any averment in the statement of claim that any fraud was committed upon the insured by the medical examiner.

Moreover, the testimony offered by plaintiff does not go to the point of showing any trick or effort on the part of defendant's physician to prevent either insured or plaintiff, who was present at the time and able to read, from seeing the application before insured signed it. Plaintiff herself testified that, after the medical examiner had written the answers in the application as given to him by insured, he gave the application to insured for his signature, thus clearly showing that the physician gave him every opportunity to either read it or have his wife examine it for him. Insured did not request his wife to read the application to him, but signed it and returned it to the medical examiner.

Therefore, it must be concluded that the testimony adduced in an endeavor to show that other answers were given than those contained in the application should not have been admitted. The facts of insured's injury and receipt of medical treatment and compensation were material to the risk. The learned court below erred in failing to direct a verdict for defendant company.

Judgment reversed, and here entered for defendant company.