# Cypher *v.* National Accident & Health Insurance Co., Appellant.

Argued April 17, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*J. Campbell Brandon,* with him *W. D. Brandon,* of *Brandon & Brandon,* for appellant.

*William H. Martin,* for appellee.

OPINION BY KENWORTHEY, J., July 15, 1944:

It is conceded that the policy of insurance on which this suit was brought to recover disability benefits was issued by appellant on the basis of an application containing the false representations that appellee had been without disability and had received no medical or surgical attention within ten years; the fact was that at the time the application was made he was carrying in his arm, at the site of the fracture on which this suit is based, a metal plate inserted as a result of a previous fracture and had had an operation for appendicitis, all —the previous fracture, the operation reducing it and inserting the plate, and the appendectomy—within five years.

The application was signed by appellee; it was filled in by appellant's agent. Appellee seeks to hold his verdict on the ground that at the time of the application he made a complete disclosure to the agent and that the fraud on the company, if any, was committed by the latter in unfaithfully recording the answers to the questions in the application. Appellee attempts to excuse his failure to read the application before signing it on the ground that he had an infection of his eyes which prevented him from using them.

The difficulty with appellee's case is that he admitted

at the trial that he requested neither the agent nor his wife, his father-in-law or mother-in-law, all of whom were present at the time the application was signed, to read it to him. The excuse he urges has been so recently discussed and ruled against him by the Supreme Court in *Prevete v. Metropolitan Life Ins. Co.*, 343 Pa. 365, 22 A. (2d) 691, and by this court in *Richardson v. Alta Life Ins. Co.*, 153 Pa. Superior Ct. 310, 33 A. (2d) 783, that extended discussion is unnecessary. As Mr. Justice DREW said in the former case, at p. 369, "Since the pronouncement of Chief Justice GIBSON, in Greenfield's Estate, 14 Pa. 489, 496, that if a party who can read 'will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law', we have never deviated from it: First Nat. Bk. & Tr. Co. v. Shaffer, 338 Pa. 244, 248."

Mr. Justice DREW did not mean that Chief Justice GIBSON's dictum in the case of a deed has always been applied to cases of this kind involving insurance applications. The contrary is true, as pointed out by Mr. Justice STERN in *Roney v. Ins. Co.*, 332 Pa. 447, 3 A. (2d) 365, where he traces the evolution of the court's present attitude. But it seems now to be settled that where an insured, by his testimony, makes out a case in which the agent has defrauded his principal but in which he, the insured, has signed an application falsely asserting that he has read the contents and that the statements contained in it are true he also makes out a case in which he is a party to the fraud. His duty is to do everything reasonably within his power to see to it that the statements in the application are in fact true. Of course, there may be cases where the insured himself has been tricked or defrauded by the agent into failing to read the application or

where the agent has misread the answers, the insured being unable himself to read the application or to have someone else read it to him: *Prevete v. Metropolitan Life Ins. Co.*, supra at 370. But there is nothing here upon which to pin an escape from the application of the general rule.

Judgment is reversed and entered for defendant.